UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BROADCAST MUSIC, INC., *et al.*,

                Plaintiffs,
v.                                            **DECISION AND ORDER**
                                                           10-CV-240S

HAIBO, INC., d/b/a YINGS WINGS THINGS
and HAIBO L. JIANG, individually

                Defendants.

## I. INTRODUCTION

Plaintiffs, Broadcast Music Inc., ("BMI") and several other entities holding music copyrights, bring this action against Haibo, Inc., doing business as Yings Wings Things ("Yings"), and its sole shareholder and director, Haibo L. Jiang for alleged violations of the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"). Presently before this Court is Plaintiffs' motion for summary judgment. (Docket No. 21.) For the following reasons, that motion is granted.

## II. BACKGROUND

**A.**     **Facts**[1]

The facts of this case are brief and mostly undisputed. BMI is a "performing rights licensing society," meaning that it licenses the right to publicly perform copyrighted musical compositions on behalf of the copyright owners of those works. (Plaintiffs' Statement, ¶ 1;

---

[1] This Court has accepted facts in Plaintiffs' statement of facts to the extent that they have not been controverted by Defendants. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

1

Docket No. 21-3.) It grants music users – like broadcasters, music halls, bars, and night clubs – the right to publicly perform any of the works in BMI's repertoire, which includes songs from each of the other plaintiffs in this action. (Id., ¶ 3, 4)

According to BMI, it sent 26 letters and made 90 phone calls to Haibo Jiang informing him that he needed to retain a licensing agreement before its songs could be performed at Yings. (Id., ¶ 19.) However, Haibo Jiang, who is the sole shareholder of Haibo, Inc., which in turn owns and operates Yings, a bar and restaurant in Tonawanda, New York, ignored these entreaties and did not enter into a licensing agreement with BMI nor any of the plaintiffs. (Id., ¶ 12.)

It is undisputed that on November 14 and 15, 2009, BMI sent a "logger" – a BMI authorized agent whose duty is to record unlicenced performances – to Yings to determine if Haibo was violating its members' copyrights. The logger, Michael Nelson, heard three songs publicly performed, "Landslide," "Travelin' Soldier," and "Play Something Country," which required a license that Haibo did not have. (Id., ¶ 15.) Plaintiffs also claim that on December 22 and 23, 2009, BMI's logger, Mitchell Greco, heard five other songs that it owned the licensing rights to: "Can't Take My Eyes Off of You," "Piece of My Heart," "Sympathy for the Devil," "Glycerine," and "Do You Realize."[2] (Id., ¶ 16.)

B. **Procedural History**

Plaintiffs filed a complaint in this Court on March 22, 2010. (Docket No. 1.) Defendants answered on April 30, 2010. (Docket No. 8.) Thereafter, Plaintiffs moved for

---

[2] It appears that BMI sent loggers to Yings on only two occasions, but BMI identifies each occasion with two calender days because the loggers stayed past midnight on November 14 and December 22. For the sake of clarity and concision, this Court will hereupon refer only to the date on which the loggers first arrived at Yings.

summary judgment on March 18, 2011. (Docket No. 21.) After briefing, which concluded on May 16, 2011, this Court took the motion under consideration without oral argument.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.     Plaintiffs' Motion for Summary Judgment**

To establish its claim of copyright infringement in this context, a plaintiff generally must establish: (1) ownership of a valid copyright; and (2) unauthorized performance of the compositions involved. See Feist Publ'ns, Inc. v. Rural Tele. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991); Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir.1963); 17 U.S.C. § 106. Plaintiffs argue that no genuine issue of material fact exists as to its claim that Defendants violated its copyrights. It submits several declarations in support of this position.

First, Kerri Howland-Kruse, Assistant Vice President at BMI, attests that BMI owns the right to issue public-performance license agreements to music users for all eight songs identified in the complaint. (Howland-Kruse Declaration, ¶ 5; Docket No. 21-2.) She also attaches to her declaration copies of the copyright registration and agreements between BMI and the copyright owners. (Exhibits A-H to the Howland-Kruse Declaration.)

Second, BMI submits the declaration of Lawrence Stevens, Assistant Vice President of General Licensing for BMI, who testifies that Haibo, Inc. does not have a licensing agreement with BMI and that Michael Nelson and Mitchell Greco were authorized by BMI to attend Yings to listen for potential violations. (Stevens Declaration, ¶¶ 9,11; Docket No. 21-1.) Attached to his declaration are the loggers "infringement reports," which were certified under 28 U.S.C. § 1746.[3] (Id., ¶ 11; Corrected Exhibit A to Stevens Declaration;

---

[3] That statute, in pertinent part, provides:
> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or

Docket No. 33.) Those reports note that the eight songs alleged to have been played were in fact played on the dates indicated in the complaint. (Id.) Stevens also testifies and attaches records indicating that: (1) BMI sent numerous notices to Haibo concerning the need to acquire a licensing agreement; and later, on several occasions, (2) BMI notified Haibo of the investigation into Yings. (Stevens Declaration, ¶¶ 4-8, 12-14.) BMI received no response to this correspondence. (Id., ¶ 12.)

Haibo concedes Plaintiffs' claim regarding the three songs played on November 14, but argues that Plaintiffs do not have admissible evidence supporting their claim regarding the five remaining songs. Thus, they argue, not only should Plaintiffs' motion be denied on those songs, but this Court should enter summary judgment in their favor instead.

Further, although it concedes the three violations, it argues that Plaintiffs' requested damages of $3,000 per song is excessive. Instead, it asks this Court to apply a $2,000 award for each admitted violation.

### 1.   Five Disputed Songs

It is undisputed that Mitchell Greco took notes on his phone while in Yings on December 22, 2009, in which he identified and recorded each song played in the bar.

---

> affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

Because he admits to working from those notes when completing the "certified infringement report," Defendants argue that those notes, which have since been destroyed or lost, are the "best evidence" under Federal Rule of Evidence ("FRE") 1002.

FRE 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content"; Defendants therefore argue that this rule bars the admission of the Mitchell infringment report because the notes, not the later-drafted report, constitute the "original writing" under FRE 1002. Continuing this line of argument, they posit that without the report, Plaintiffs have no admissible evidence to support their claim regarding the five songs allegedly played on December 22, 2009.

But Defendants' argument ultimately fails. Initially it must be noted that the report, which was sworn to under penalty of perjury and thus serves as an affidavit, need not be admissible itself. See Santos v. Murdock, 243 F.3d 681, 684 (2d Cir. 2001). Rather, it need only "contain evidence that will be presented in an admissible form at trial." Id.; see also Fed. R. Civ. P. 56(c)(4). Here, Plaintiffs have presented a document containing admissible evidence because Greco has personal knowledge, independent of the notes he created that night, of the songs that were played: Greco was at Yings and heard the songs in question being played himself. At trial, he would therefore not be attempting to prove the contents of his notes, but simply drawing on his personal knowledge of that night. See FRE 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"); see also Dean v. N.Y. Marriott Fin. Ctr. Hotel & Marriott Int'l, 94 Civ. 4343 (TPG), 1998 WL 574382, at *5 (S.D.N.Y. Sept. 8, 1998) (best evidence rule does not apply where witness is not attempting to prove the contents of a writing); United States v. Finkielstain, 718 F. Supp.

6

1187, 1192 (S.D.N.Y. 1989) ("As to the best evidence rule, that canon requires the production of a document to prove its content when a witness testifies on the issue of what that document contains. It does not require production of a document simply because the document contains facts that are also testified to by a witness.").[4]

Moreover, even if FRE 1002 were to apply, the admission of the report would be permissible under FRE 1004, which provides that "an original is not required . . . if . . . all the originals are lost or destroyed and not by the proponent acting in bad faith." Defendants argue to the contrary because Greco deleted the notes after this action had been commenced. But Greco's deposition testimony reveals that he deleted the notes as a matter of course without a hint of bad faith and without knowledge that litigation had been commenced. When asked if he preserved the notes, Greco responded, "I did for a while. I usually keep them about nine months. And then, after nine months, I didn't hear anything about this, so I went ahead and deleted them." (Greco Deposition, 14:16-19; Docket No. 28-3.) Because Greco deleted the notes pursuant to routine procedure, there is no reason for this Court to find that Greco acted in bad faith. See United States v. Harper, No. 05-CR-6068, 2009 WL 140125, at *2 (W.D.N.Y. Jan. 20, 2009) (collecting cases that find no violation of FRE 1002 where original is destroyed pursuant to routine procedure). As such, the report would not be barred by the best-evidence rule.

Because this is the only argument proffered by Defendants, and it otherwise

---

[4] Nor would the best-evidence rule would be implicated if Greco were to refresh his memory with his report. See, e.g., 28 Charles Alan Wright, Victor James Gold & Michael H. Graham, Federal Practice and Procedure § 6184 (1st ed. 2011) ("It is frequently stated that anything can be used to refresh the recollection of a witness. If a writing is employed, it is generally agreed that it need not have been authored by the witness, need not have been made contemporaneous with the matters described therein, need not be an original, and need not be admissible or even reliable.").

concedes liability, Plaintiffs' motion on this ground is granted.

### 2. Statutory Damages

In lieu of actual damages under the Copyright Act, a plaintiff may receive an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement. 17 U.S.C. § 504(c)(1). If the defendant's infringement was willful, the district court may also enhance the statutory damages award to as much as $150,000 per infringed work. Id., at (c)(2). "District courts 'enjoy wide discretion . . . in setting the amount of statutory damages.'" Bryant v. Media Right Prods., Inc., 603 F.3d 135, 143 (2d Cir. 2010) (quoting Fitzgerald Pbl'g Co. v. Baylor Pbl'g Co., 807 F.2d 1110, 1115 (2d Cir.1986)). Indeed, this Court's task is to determine a "just" award, in which "'the court's 'discretion and sense of justice are controlling' subject only to the specific statutory limits." Engel v. Wild Oats, Inc., 644 F.Supp. 1089, 1091 (S.D.N.Y. 1986) (quoting F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 232, 73 S. Ct. 222, 97 L. Ed. 276 (1952)).

Plaintiffs seek a statutory award of $3,000 per infringement, arguing that the violations were wilful and citing the voluminous mailings and phone calls made to Haibo Jiang that went unanswered.

Haibo Jiang contends that he considered the mailings "junk mail" and never opened them. He also claims that he never received the phone calls. Thus, he argues that the violations were not wilful and asks this Court to apply a $2,000-per-infringement award.

But "[u]nder the Copyright Act, there is no need for an infringer to act willfully for it to be sanctioned" under § 504(c)(1). Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 265 (2d Cir. 2005). When determining the amount of statutory damages to award for copyright infringement, courts may consider: "(1) the infringer's state

of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." Bryant, 603 F.3d at 144.

Although this Court does not have all the information necessary to examine each of these factors, understanding that these are simply suggested considerations and the fact that the parties are only $1,000 apart on a scale of $750 to $150,000, this Court finds that it can capably make an award determination based on the information before it.

This Court finds that the first factor listed above proves most helpful in this case. BMI has attached numerous, properly addressed letters that it sent to Haibo Jiang at the Yings address. Jiang claims to have discarded each of these letters as mere "solicitations." While that may have been true in the beginning, the letters soon taken a different tenor and contained accusations that Jiang was playing music without the necessary licensing agreement. As a business owner, Jiang should have took these letters seriously and dealt with them in an responsible manner. This is especially true after BMI's investigation into Yings, when BMI tried repeatedly to warn him that it had proof that his actions violated copyright law and offered to resolve the matter if Jiang entered into a licensing agreement. But instead of responding to the letters or entering into a contract, he recklessly discarded the letters and blithely continued to play copyrighted songs in contravention of the law. This demonstrates a "willful blindness" towards BMI's rights that suggests that a higher statutory award is appropriate. See Island Software, 413 F.3d at 263.

However, even in the cases cited by Plaintiffs in their supporting memorandum, only

9

two courts awarded damages higher than $2,500. See, e.g., Broad. Music Inc., v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 544-45 (E.D. Pa. 2008) (awarding $2,000 per violation). One of those cases is significantly distinguishable because the defendant was a radio station, not a local bar. Dream Dealers Music v. Parker, 924 F. Supp 1146, 1153 (S.D. Ala. 1996).

The facts In Spring Mount neatly align with this case. There, BMI brought an action based on the reports of its logger, Michael Nelson, who found that a local bar was playing music without a copyright licensing agreement. Defendants defaulted and the court awarded BMI $2,000 for each infringement. Considering this unbinding, but persuasive precedent and also weighing Jiang's willful ignorance, this Court finds that an award of $2,500 per violation is reasonable and just. Such an award, in this Court's discretion, will adequately serve the compensatory, punitive, and deterrent purposes of the statute. See Fitzgerald Pub. Co., 807 F.2d at 1117 (describing the compensatory and punitive damages aspect of a statutory award); see also Bryant, 603 F.3d at 144 (fourth factor).

### 3. Permanent Injunction

Among the relief that Plaintiffs seek is a permanent injunction barring Defendants from future copyright violations.[5] The Copyright Act authorizes a court to grant a permanent injunction "on such terms as [the court] may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Permanent injunctions are routinely awarded in favor of copyright owners whose protected works have been misappropriated in order to serve the public's interest in upholding copyright protections. Interscope

---

[5] Defendants do not contest this request.

Records v. Owusu, No. 5:05-CV-0102, 2007 WL 2343676, at *3 (N.D.N.Y. Aug. 13, 2007) (citing Autoskill Inc. v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1499 (10th Cir. 1993), *overruled on other grounds by* TW Telecom Holdings Inc. v. Carolina Internet Ltd., 661 F.3d 495 (10th Cir. 2011)).

Here, the uncontroverted testimony of BMI's investigators establishes that Defendants infringed Plaintiffs' copyrights. It further establishes that Defendants willfully disregarded any attempt by BMI to enter into a licensing agreement and thereby comply with the law. Plaintiffs therefore should be granted a permanent injunction against unauthorized public performances of any copyrighted compositions licensed through BMI. See Broad. Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 659 (S.D.N.Y. 1996) (granting BMI a permanent injunction on similar facts); accord Broad. Music, Inc. v. Niro's Palace, Inc., 619 F. Supp. 958, 963 (N.D. Ill. 1985) (awarding permanent injunction where local bar "provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI").

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted, they are awarded $2,500 per each of the eight infringements, and Defendants are enjoined from further infringing Plaintiffs' rights under federal or state copyright law.[6]

Further, because it is undisputed that Haibo Jiang has the right and ability to supervise infringing copyright activities and a direct financial interest in such activities,

---

[6] Although BMI initially requested attorney fees and costs, the parties have agreed to defer this issue until after resolution of the motion for summary judgment. (See BMI's Reply Memorandum, p. 10; Docket No. 34-2.)

Records v. Owusu, No. 5:05-CV-0102, 2007 WL 2343676, at *3 (N.D.N.Y. Aug. 13, 2007) (citing Autoskill Inc. v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1499 (10th Cir. 1993), *overruled on other grounds by* TW Telecom Holdings Inc. v. Carolina Internet Ltd., 661 F.3d 495 (10th Cir. 2011)).

Here, the uncontroverted testimony of BMI's investigators establishes that Defendants infringed Plaintiffs' copyrights. It further establishes that Defendants willfully disregarded any attempt by BMI to enter into a licensing agreement and thereby comply with the law. Plaintiffs therefore should be granted a permanent injunction against unauthorized public performances of any copyrighted compositions licensed through BMI. See Broad. Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 659 (S.D.N.Y. 1996) (granting BMI a permanent injunction on similar facts); accord Broad. Music, Inc. v. Niro's Palace, Inc., 619 F. Supp. 958, 963 (N.D. Ill. 1985) (awarding permanent injunction where local bar "provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI").

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted, they are awarded $2,500 per each of the eight infringements, and Defendants are enjoined from further infringing Plaintiffs' rights under federal or state copyright law.[6]

Further, because it is undisputed that Haibo Jiang has the right and ability to supervise infringing copyright activities and a direct financial interest in such activities,

---

[6] Although BMI initially requested attorney fees and costs, the parties have agreed to defer this issue until after resolution of the motion for summary judgment. (See BMI's Reply Memorandum, p. 10; Docket No. 34-2.)

Haibo, Inc. and Haibo Jiang are jointly and severally liable for the infringements under the Copyright Act. <u>Sygma Photo News, Inc. v. High Soc. Magazine, Inc.</u>, 778 F.2d 89, 92 (2d Cir.1985) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.").

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Summary Judgment (Docket No. 21) is GRANTED.

FURTHER, that Plaintiffs are awarded $2,500 for each of the eight instances of copyright infringement, totaling $20,000.

FURTHER, that Defendants, their officers, employees, and agents, are enjoined from publicly performing, allowing, or causing to be publicly performed the musical compositions licensed by BMI without lawful authorization.

FURTHER, that the Clerk of the Court is directed to take the steps necessary to close this case.

SO ORDERED.

Dated:   March 12, 2012
         Buffalo, New York

                                                    /s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                        Chief Judge
                                                United States District Court